# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| KRISTI S., <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | No. C21-3-LTS-KEM <br><br> **MEMORANDUM OPINION AND ORDER** |

Plaintiff Kristi S. (the Claimant) seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability income (DI) benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. (the Act).[1] The Claimant contends the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period. For the reasons that follow, the Commissioner's decision is affirmed.

## I. BACKGROUND

The Claimant was born in 1970. AR 70. She completed high school and has previously worked as a counter attendant. *Id*. at 305. She filed her application for DI on October 20, 2017, alleging a disability onset date of July 23, 2017. *Id*. at 71. She alleged disability due to nerve damage and bulging discs in her back, diabetes, depression and a learning disability. *Id*. at 205. Her claims were denied initially and on

---

[1] In accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, I will refer to a Social Security claimant by the claimant's first name and last initial due to significant privacy concerns.

reconsideration. *Id.* at 126-35. She then requested a hearing before an Administrative Law Judge (ALJ). AR 138-39. ALJ Julie K. Bruntz conducted an in-person hearing on May 30, 2019. *Id.* at 63-95. The Claimant, her mother and a vocational expert (VE) testified. The ALJ issued a decision on November 15, 2019. *Id.* at 13-39. She determined there were jobs available in significant numbers in the national economy that the Claimant could perform, such as document preparer, dresser, and stuffer. *Id.* at 32-33.

The Claimant sought review by the Appeals Council, which denied review on November 19, 2020. *Id.* at 6-9. Thus, the ALJ's decision became the final decision of the Commissioner. *Id.*; 20 C.F.R. § 404.981. On January 15, 2021, the Claimant filed a complaint in this court seeking review of the Commissioner's decision. The parties have submitted a stipulation of facts (Doc. 18) and have briefed the issues. *See* Docs. 19, 22, 23. They have also filed supplemental briefs to address the separate issue of whether the ALJ's appointment violated the Appointments Clause. *See* Docs. 30, 33, 36. The matter is fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices or

2

other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 404.1566(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. § 404.1572(a).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. § 404.1520(c); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 404.1521(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education and work experience. 20 C.F.R. §§

404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant cannot do his past relevant work then he is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 404.1560(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. § 404.1545(a)(1). The RFC is based on all relevant medical and other evidence. *Id.* § 404.145(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education and work experience. *Id.* §§ 404.1512(f), 404.1520(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. *Id.* At step five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence

of a disability. *Id.* § 404.145(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps the ALJ has determined the claimant is disabled but there is medical evidence of substance use disorders, the ALJ must decide if that substance use is a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. § 404.1535.

### III. THE ALJ'S FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since July 23, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: obesity; status-post left knee arthroplasty; degenerative disc disease of the lumbar spine status-post L5-S1 laminectomy/foraminotomy and redo; mild left acromioclavicular degenerative joint disease and rotator cuff tendonitis; diabetes mellitus; depressive disorder; PTSD; neurodevelopmental disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform less than a full range of sedentary work as defined in 20 CFR 404.1567(b) such that the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 2 hours

in an 8-hour workday with normal breaks; sit for 6 hours in an 8-hour workday with normal breaks; the ability to push or pull, including the operation of hand and foot controls, would be unlimited within the weights described; occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds; occasionally balance, kneel, stoop, crouch or crawl; avoid concentrated exposures to hazards such as heights and dangerous machinery; could understand, remember and appropriately carry out simple work-related instructions, use judgment in making simple work-related decisions, and deal with changes in a routine work setting; and only occasional contact with the public, coworkers and supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 23, 1970 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a)).

AR 18-32.

## IV. *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

6

Case 1:21-cv-00003-LTS-KEM   Document 38   Filed 09/27/22   Page 6 of 20

to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence

7

differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.     DISCUSSION

The Claimant argues the ALJ made the following errors:

1. Failed to inquire about a possible conflict between the Dictionary of Occupational Titles (DOT) and the Selected Characteristics of Occupations (SCO) under Social Security Ruling 00-4P

2. Failed to articulate reasons for not including reading and writing limitations in the RFC after finding the consultative examiner psychologist's opinions persuasive

3. Failed to fully and fairly develop the record concerning the Claimant's physical limitations

*See* Doc. 19. The Claimant also argues the ALJ lacked a proper appointment under the Federal Vacancies Reform Act (FVRA) and the Appointments Clause of the United States Constitution and that her claim should be remanded to be decided by a new ALJ who was properly appointed. Doc. 30. I will address each of these arguments separately below.

### A.     *Social Security Ruling 00-4P*

The Claimant notes the ALJ found she was limited to understanding, remembering and carrying out "simple work-related instructions, use judgment in making simple work-related decisions, and deal with changes in a routine work setting." AR 19. She concluded the Claimant was able to perform jobs as a document preparer, DOT code 249.587-018, with approximately 45,835 jobs nationally; dresser, DOT code 209.587-

8

010, with approximately 7,338 jobs nationally; and stuffer, DOT code 731.685-014, with approximately 4,121 jobs nationally. *Id.* at 33. The Claimant points out that the job of document preparer is a Reasoning Level 3 job, which courts have recognized can amount to a conflict with a limitation of simple, routine tasks. Pursuant to SSR 00-4P, the Claimant argues the ALJ was required to resolve the conflict between the vocational expert's testimony concerning this job and the DOT, which identifies the document preparer job as requiring Reasoning Level 3. The Claimant argues the ALJ's failure to resolve this conflict was not harmless error because the remaining jobs – addresser and stuffer – do not constitute jobs available in significant numbers in the national economy.

The Commissioner argues there is no conflict between an RFC of simple, work-related instructions and decisions, changes in a routine work setting and occasional interpersonal contact and the document preparer job. Doc. 22 at 7 (citing *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 367 (8th Cir. 2007)). The Commissioner notes that the regulations identify the document preparer job as unskilled work, which is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Id.* at 8 (quoting 20 C.F.R. § 404.1568(a)). Reasoning Level 3 jobs require "[a]pply[ing] commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] deal[ing] with problems involving several concrete variables in or from standardized situations." *Id.* (quoting DOT, Appendix C, 1991 WL 688702).

The Commissioner argues the DOT job description is also consistent with the RFC limitations. *See* DOT, 249.587-018, 1991 WL 672349 (describing the job as involving cutting paper/documents with a paper cutter or knife, making photocopies, and/or stamping standardized symbols on pages or inserting instruction cards between pages). Finally, the Commissioner notes that the Claimant's previous semi-skilled work as a counter attendant demonstrates the Claimant's ability to perform the job of document preparer, as she left her previous job due to physical issues rather than mental ones. The Claimant has admitted that her "medical" (as opposed to mental) issues prevent her from

9

working and her doctor has opined she had the ability to understand, learn and recall simple procedural instructions and would only have increased difficulty if tasks required more than minimal literacy.

In *Hillier*, the ALJ found the claimant could perform unskilled to low semiskilled work and could understand, remember, and follow simple, concrete instructions. *Hillier*, 486 F.3d at 364. Based on the VE testimony, the ALJ concluded the claimant had the ability to perform other work that was available in significant numbers in the national economy including as a cashier. *Id*. The cashier position required Reasoning Level 3 development, which the claimant argued was inconsistent with the ALJ's hypothetical question limiting the claimant to understanding, remembering, and following concrete instructions. *Id*. at 366. The court recognized that "[i]n the abstract, tension exists between only being able to understand, remember, and follow simple, concrete instructions and working as a cashier." *Id*. at 367. However, the court observed that Hillier had previously worked as a cashier and there was no evidence of any mental deterioration since the claimant's past work. *Id*. Therefore, the court concluded the claimant's job history supported a conclusion that her mental limitations did not preclude her from working as a cashier. *Id*.

The Commissioner advocates for a similar analysis with regard to the job of document preparer identified by the VE, based on the Claimant's previous work as a counter attendant. SSR 00-4P states:

> When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. In these situations, the adjudicator will:
> - Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
> - If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

10

SSR 00-4P. The ALJ is also required to "explain in the determination or decision how he or she resolved the conflict." *Id.*

Similar to *Hillier*, the Claimant has previous work that is informative on this issue. The Claimant's previous work was as a counter attendant, which was semi-skilled with a Reasoning Level 3. *See* DOT, 369.477-014, 1991 WL 673056. The VE acknowledged that the Claimant had acquired skills from this job in customer service and maintaining records. AR 305. The record demonstrates the Claimant stopped working at this job (which she had held for 11 or 12 years) due to her leg and back pain rather than mental issues. *Id.* at 23, 341. Indeed, her employer reported that she was an "excellent employee" with excellent attendance, a tenacious work ethic and that she never hesitated to perform any assigned task or work extra hours if needed. She had also proved herself to be very responsible and was moved to a supervisory role. *Id.* at 200.

The record does not demonstrate that the Claimant's mental issues deteriorated such that she could not perform an unskilled job. As the Commissioner notes, the Claimant stopped working in July 2017 but did not seek mental health treatment until after a November 2017 consultative examination in conjunction with her disability application. AR 340-42. At that appointment, the Claimant acknowledged she had stopped working due to her leg and back pain. While she did have some symptoms related to her mental health, she reported no changes in her ability to concentrate, AR 340, and the consultative examiner found that her abstract reasoning was intact, her thought processes were goal-directed and she demonstrated an intact capacity for learning and recall. *Id.* at 341. The consultative examiner opined that she had the ability to understand, learn and recall simple procedural instructions, but could be expected to have increased difficulty in tasks that required more than minimal literacy. *Id.* at 342. Later treatment records for the Claimant's mental issues demonstrate that her symptoms were well-controlled with medication and there were no complaints or observations that her ability to concentrate was affected.

11

Based on the Claimant's previous semi-skilled work at a Reasoning Level 3, this case is distinguishable from *Ferrin v. Saul*, 19-CV-4010-LRR, 2020 WL 1979754, at *14 (N.D. Iowa Apr. 8, 2020), *report and recommendation adopted sub nom. Ferrin v. Comm'r of Soc. Sec.*, 19-CV-4010-LRR, 2020 WL 1976297 (N.D. Iowa Apr. 24, 2020); *Lathrop v. Comm'r of Soc. Sec.*, No. 1:19-cv-95-MAR, at *45-51 (N.D. Iowa Nov. 25, 2020); and *Dighton v. Saul*, No. C18-57-LTS, 2019 WL 4731943, at *5-6 (N.D. Iowa Sept. 27, 2019). In *Lathrop*, there was no prior work that could resolve the issue of whether the claimant was able to perform jobs requiring Reasoning Level 3. *See Lathrop*, No. 1:19-cv-95-MAR at *48. Nor did the claimant's RFC include an instructions limitation or address the claimant's ability to handle changes in work settings. *Id*. at *49.

This case is similar to *Dighton* in that the RFC (and hypothetical to the VE) contained limitations based on instructions, work pressure and change in workplace setting. *See Dighton*, 2019 WL 4731943, at *4-5 (claimant limited to "simple, routine and repetitive tasks . . . [with] only simple work-related instructions and decisions, and with only occasional judgment and workplace changes). In *Dighton*, the ALJ concluded the claimant's mental limitations precluded his prior work. *Id.* Here, there is no indication that the Claimant could not perform her past prior work based on her mental limitations. Rather, her inability to perform that work was based on her physical limitations. *See* AR 92-93 (in providing hypothetical to VE consistent with RFC, the VE testified prior work would be precluded because standing and walking limitation of two hours of an eight-hour day would allow only for sedentary employment); AR 32 (explaining that the Claimant's past relevant work was performed within a range of light physical demands).

In *Ferrin*, the court considered whether an RFC requiring "short, simple instructions" was compatible with Reasoning Level 3 jobs. *Ferrin*, 2020 WL 1979754, at *13. The court remanded for the ALJ to resolve the conflict between the limitation of short, simple instructions and Reasoning Level 3, but acknowledged that unlike *Hillier*,

12

there was no evidence that the claimant's past work history qualified her for the jobs identified. *Id.* at *14-15. I agree with the Commissioner that the record here demonstrates the Claimant retained the capacity to perform the unskilled document preparer job identified by the VE. Her past relevant work was semi-skilled and the record does not suggest any deterioration of her mental capabilities that would preclude similar work or unskilled work as a document preparer, which exists in significant numbers in the national economy. Any error in failing to ask the VE about possible conflicts between his testimony and the DOT was harmless as there does not appear to be a conflict. *See Renfrow v. Astrue*, 496 F.3d 918, 921, (8th Cir. 2007)

## B.   *Reading and Writing Limitations*

The Claimant argues the ALJ failed to articulate reasons for not including reading and writing limitations in the RFC after finding the consultative examiner's opinions persuasive. The consultative examiner, Dr. March, offered the following opinion:

> I believe that Kristi has the ability to understand[,] learn and recall simple procedural instructions. If these tasks were to require more than a minimal level of literacy, she would likely experience increasing levels of difficulty with managing that . . . level of functioning independently. I would anticipate that she would have at least moderate problems managing complex instructions procedures and locations. Her physical difficulties likely preclude her from maintaining consistent pace of activity. She is capable of managing interpersonal interactions effectively, if these do not require much more than very simple written communication. If it is determined that she is eligible for benefits, she is likely capable of managing those independently.

AR 342. The ALJ discussed Dr. March's opinion as follows:

> The undersigned has considered the opinion of Dr. March, which noted the claimant endorsed limitations due to medical issues and not mental health issues. However, because of her reported history of special education and difficulty with complex tasks and due to medical conditions, she would have difficulties maintaining pace. She generally retained interpersonal abilities to engage with others. With the initiation of medication management symptoms of depression and anxiety improved. As such, the undersigned

13

> finds opinion of Dr. March persuasive and consistent with regard to cognitive limitations. However, the undersigned cannot ignore the claimant's sparse mental health treatment.

AR 31-32.

The Claimant argues that when an ALJ affords significant weight to an opinion, the ALJ must explain why portions of the opinion that are more limiting than the ALJ's RFC determination were not adopted. Doc. 19 at 8 (citing *Gann v. Berryhill*, 864 F.3d 947, 952-53 (8th Cir. 2017)). The RFC includes the following limitations related to the Claimant's mental health:

> understand, remember and appropriately carry out simple work-related instructions, use judgment in making simple work-related decisions, and deal with changes in a routine work setting; and only occasional contact with the public, coworkers and supervisors.

AR 19. In her discussion, the ALJ noted:

> The claimant reported a history of a learning disorder. To this end, she required some assistance with reading comprehension when completing forms during the evaluation. However, the claimant retained the ability to understand, learn and recall simple procedural instructions. If tasks were to require more than a minimal level of literacy, the claimant would likely experience increasing difficulty with managing the tasks independently.

AR 29.

In *Gann*, the ALJ failed to include any mention of adaptation restrictions in the RFC or the hypothetical posed to the VE. The court explained:

> Here, two medical professionals, Drs. Rafael Smith and C. William Breckenridge, Psy.D., opined that Gann's ability to adapt to a work environment was compromised because of the combination of her mental and physical impairments. The ALJ found Breckenridge and Smith to be credible giving 'significant weight' to both of their opinions. Breckenridge stated that "[Gann's] ability to adapt to a work environment appears to be *highly marginal*." (emphasis added). Smith similarly noted that Gann had (1) "adaptive limitations," (2) "moderately limited" "ability to respond appropriately to changes in the work setting," and (3) cannot work in a setting that "require[s] frequent or intense . . . change in routine." Neither

14

> the RFC assessment nor the ALJ's hypothetical posed to the VE included these adaptive limitations described by sources to whom the ALJ gave "significant weight."

*Gann*, 864 F.3d at 952-53. Instead, the relevant part of the RFC determination in that case included limitations of "simple, routine, repetitive tasks with no public interaction" and "can work around co-workers throughout the day, but can have only occasional interaction with her co-workers." *Id.* at 951.

Based on *Gann*, I do not agree that the ALJ was required to include any specific reading or writing limitations in the RFC or hypothetical question to the VE. Dr. March opined that the Claimant had the ability to understand, learn and recall simple procedural instructions, which the ALJ included in the RFC. Dr. March explained that if these tasks required more than a minimal level of literacy, the Claimant would likely experience increasing levels of difficulty in managing those tasks independently. This statement was not an additional limitation, but an inference that the ability to understand, learn and recall simple procedural instructions is consistent with a minimal level of literacy. As such, the ALJ's RFC limitation of the ability to understand, remember and appropriately carry out simple work-related instructions is consistent with Dr. March's opinion.

Moreover, as the Commissioner points out, the Claimant's prior work as a counter attendant had a language development language of 2, which is the same language development level as the document preparer job identified at Step 5. *See* DOT 369.477.014, 1991 WL 673056 (counter attendant); DOT 249.587-018, 1991 WL 672349 (document preparer). As noted above, the Claimant excelled at this job and stopped working due to her back/leg pain rather than issues related to literacy or her mental health. The Claimant has not otherwise demonstrated that a reading/writing limitation beyond the ability to understand, remember and appropriately carry out simple work-related instructions is necessitated by the record. *See Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) ("the burden is on the claimant to establish his or her RFC").

## C. *Development of the Record on the Claimant's Physical Limitations*

The Claimant argues the ALJ failed to fairly and fully develop the record related to her standing and walking limitations. She notes that the ALJ acknowledged that the Claimant reported using a walker and a wheelchair and failed to order a consultative examination or otherwise determine whether the Claimant could actually stand and/or walk for 2 hours in an 8-hour workday with normal breaks as included in the RFC. The Claimant argues the opinions of the nonexamining state agency medical opinions are insufficient to support this limitation because they were issued in November 2017 and April 2018, prior to the Claimant's redo surgery in November 2018 due to her worsening radiculopathy issues. She contends the ALJ should have at least obtained the treatment records from the surgeon, Dr. Smith, as the record does not explain why a redo surgery was even necessary. The Claimant contends the ALJ needed additional medical opinion evidence to support the physical RFC limitations. She points out that prior to her back surgery and onset date, she had a strong earnings history, which adds credibility to her disability claim.

The Commissioner argues the record was sufficiently developed and an ALJ need obtain additional evidence only when the evidence is ambiguous or the record is inadequate to determine disability. Doc. 22 at 19 (citing 20 C.F.R. § 404.1520b(b)). The Commissioner notes that the ALJ considered and discussed the Claimant's need to use an assistive device. She also notes that the record shows Dr. Ray prescribed a walker in August 2018 after the Claimant requested one and there were times when the Claimant did not use a walker. The Commissioner observes that treatment notes indicate the Claimant's gait and ambulation were normal and she had full/normal strength in her lower extremities, which undermine the Claimant's alleged need for a walker. While the Claimant did experience some difficulties walking in August 2018, had surgery in November 2018, continued experiencing some problems in February 2019, she had normal gait and lower extremity/lumbar range of motion by July 2019 and "100% relief" by August 2019 when she began a spinal cord stimulator trial. The Commissioner argues

16

that any additional evidence that may have become available after the state agency medical consultants issued their opinions does not necessarily make those opinions unreliable.

The ALJ considered evidence that post-dated these opinions and found it supported the April 2018 opinion that the Claimant could perform sedentary work. As for treatment records from Dr. Smith, the Commissioner notes these may not exist, as the Claimant refused to see him after she was referred back to him due to complaints of pain following her surgery. The Commissioner argues that the ALJ fulfilled her duty to develop the record fully and fairly.

"[T]he ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (citing *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994)). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalalal*, 22 F.3d 186, 189 (8th Cir. 1994). *See also McCoy*, 648 F.3d at 612 ("The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."). "[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Haley v. Massanari*, 258 F.3d 742, 750 (8th Cir. 2001) (quoting *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).

With regard to the Claimant's use of an assistive device, I find the ALJ sufficiently considered this limitation and it did not require further development. *See* AR 30 ("The claimant presented with an assistive device in August 2018 and again in July 2019. However, no assistive device was observed at other times."); AR 31 ("At the hearing, the claimant indicated that she used the walk[er] to sit while doing the dishes; it does not appear that she used the walker to ambulate . . . The claimant testified that she was trying

17

to lose weight by walking. Further, in discussions concerning implantation of a spinal cord stimulator, use of a walker was never mentioned. The walker was not prescribed by an orthopedist, but a treating doctor due to her symptoms; it was not prescribed as a medical necessity."). In the hypothetical questions to the VE, the ALJ asked if the identified jobs would be possible if the individual had to use a walker at work. The VE testified that the use of a walker generally requires accommodation that is met by the employer. AR 94.

The record contains sufficient evidence to support an RFC limitation that the Claimant could stand or walk 2 hours in an 8-hour workday with normal breaks, with or without an assistive device. The state agency medical consultant opined on initial review in December 2017 that the Claimant could stand or walk 6 hours in an 8-hour workday. AR 102. On reconsideration in April 2018, the state agency medical consultant reduced that limitation to 2 hours. AR 117. He reasoned that allegations that the Claimant was unable to walk more than across a room were inconsistent with her admissions that she would shop in stores for two hours, completed household chores and had no difficulty with personal care. *Id.*

With regard to the Claimant's post-surgery abilities and limitations, there is ample medical evidence documenting how the Claimant was functioning that provided sufficient information for the ALJ to determine the Claimant's limitations. The medical evidence reflects that initially, the Claimant did not see improvements after surgery. In February 2019, she reported continued problems with right lower back pain radiating into the right leg. AR 564. Physical therapy had not helped. *Id.* She continued reporting back and leg pain at appointments in May, June and July 2019. She had significant muscle spasm and soft tissue swelling in the left and right lower lumbar spine and positive straight leg raise testing bilaterally at 60 degrees. AR 868-69. She also had diminished leg strength with flexion and extension in the right leg, with the left leg testing normal. *Id.* Injections and pain medications were not effective and her providers suggested a spinal cord stimulator. The trial spinal cord stimulator was placed on August 26, 2019. AR 858.

18

On August 29, 2019, the Claimant reported "100% relief of her symptoms" using the stimulator and rated her pain level at 0. She was pleased with the results and her overall activity levels were markedly improved, as was her mood. AR 855. She was referred for placement of a permanent spinal cord stimulation system. AR 856. Medical records through October 2019 do not reflect complaints of back or leg pain and her motor strength for her lower extremities was documented as normal. AR 792-854; 935-63. As noted above, the state agency medical consultant concluded in April 2018 that the record supported a sedentary limitation of standing or walking 2 hours in an 8-hour workday. The record does not reflect an ongoing worsening of the Claimant's back and leg pain symptoms after her surgery in November 2018 that would necessitate a consultative examination or the need to obtain additional medical evidence. While the Claimant experienced continuing back and leg pain immediately following surgery, that pain was alleviated by the placement of a spinal cord stimulator that also improved the Claimant's activity levels. As such, the ALJ's RFC limitation of being able to stand or walk 2 hours in an 8-hour workday is substantially supported by evidence, including medical evidence, in the record and no further development was necessary.

### D. *The ALJ's Appointment Under the FVRA and Appointments Clause*

For the reasons set forth in *Sidney M. v. Kijakazi*, No. 21-2034-LTS-KEM (N.D. Iowa Sept. 26, 2022), I find that Nancy A. Berryhill was properly serving as Acting Commissioner under the FVRA at the time of ratifying the ALJ's appointment in July 2018 and that Berryhill's acting service under the FVRA and the ratification of the ALJ's appointment did not violate the Appointments Clause.

### VI. CONCLUSION

After a thorough review of the entire record and in accordance with the standard of review I must follow, I conclude that the ALJ's determination that the Claimant was not disabled within the meaning of the Act is supported by substantial evidence in the

19

record. Accordingly, the final decision of the Commissioner is **affirmed**. Judgment shall enter against the Claimant and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 27th day of September, 2022.

_____
Leonard T. Strand, Chief Judge